UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:22-cr-36 |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| DAVID MICHAEL WOODS, | ) | MOTION TO RECONSIDER RULING |
| | ) | ON MOTION TO SUPPRESS AND |
| Defendant. | ) | FOR *FRANKS* HEARING |
| | ) | |

COMES NOW the United States of America, by and through Assistant United States Attorney Andrea L. Glasgow, and hereby responds in opposition to the defendant's motion to reconsider ruling on the motion to suppress and for *Franks* hearing, filed at docket 103, 104.

**TABLE OF CONTENTS**

**I. PROCEDURAL HISTORY** ........................................................................................ 2
**II. *FRANKS* HEARING**.................................................................................................... 2
    (1) The video's existence is not negated because it was not located in the Cedric Snapchat return................................................................................ 3
    (2) The affiant did not "falsely claim[]the whiteboard in the Defendant's home related to travel." ........................................................ 3
    (3) Maguire described receiving more than one image/video from Woods ................................................................................................................. 5
    (4) The affiant did not state that Maguire knew MV1's name................ 6
    (5) & (7) The affidavit contained sufficient information about Maguire's credibility ...................................................................................... 7
    (6) The affiant accurately described the state of the house on East Pleasant Street ....................................................................................... 9
    (8) No additional information was omitted to mislead the magistrate and misrepresent the known facts................................................................. 10
**III. PROBABLE CAUSE**................................................................................................ 11
**IV. CONCLUSION** ........................................................................................................ 14

1

## I.   PROCEDURAL HISTORY

Woods was federally charged on April 13, 2022, with two counts of production of child pornography, one count of distribution of child pornography, and one count of possession of child pornography. (R. Doc. 2.) Woods, through counsel, filed a motion to suppress physical evidence, testimony of officers, and admissions of the defendant, and requested a *Franks* hearing. (R. Doc. 69.) The government resisted. (R. doc. 78.) The search warrants at issue were filed at docket 72. (R. Doc. 72.) The court denied the motion to suppress and request for *Franks* hearing. (R. Doc. 81.) The defendant then fired his attorney and has now filed a pro se motion to reconsider the court's prior ruling. (R. Doc. 103, 104.) The defendant makes several claims, which generally reassert his entitlement to a *Franks* hearing and again argue that the search warrants lacked probable cause. (*See id.*) The government will address these issues in turn, but also hereby incorporates prior briefing on these topics (filed at R. Doc. 78).

## II.   *FRANKS* HEARING

The defendant makes several claims that he is entitled to a *Franks* hearing. They are generally as follows[1]: (1) the video was not located in the Snapchat account return for the Cedric snapchat account, and therefore the video never existed; (2) the affiant "falsely claimed the whiteboard in the Defendant's home related to travel when the whiteboard had nothing to do with travel but with virtual reality videos"; (3) Maguire only admitted to one video, not two; (4) Maguire did not know MV1's

---

[1] For ease of reference, the government will refer to the arguments by the number defendant assigned to them in his motion and corresponding brief.

name; (5) & (7) Maguire was not credible; (6) the house on East Pleasant Street was not empty; (8) "additional mistakes were omitted to mislead the magistrate and misrepresent the known facts."

**(1) The video's existence is not negated because it was not located on the Cedric Snapchat return.[2]**

As an initial matter, the government rejects the conclusion that because the video was not found in the Cedric Snapchat account return it never existed.[3] Even if the failure to locate the video in the Cedric Snapchat account return could be said to have had some effect on the determination of probable cause, the Court has previously found that the affiant did not have the information back from the Cedric Snapchat account until *after* the search warrants were obtained, and therefore, could not have know that the data did not contain the video. (*See* R. Doc. 81 p. 6.) The affiant could not have knowingly or recklessly omitted information that he did not know. *Id*.

**(2) The affiant did not "falsely claim[] the whiteboard in the Defendant's home related to travel."**

The defendant next argues that he is entitled to a *Franks* hearing because the affiant "falsely claim[ed] the picture of the whiteboard with Mall of America, and Wisconsin Dells corroborated travel to those places." (R. Doc. 104, p. 3.) The affidavits describe Maguire's interview, wherein he discussed planning to meet up with Woods and the two minors at Mall of America. Maguire further described his knowledge that

---

[2] The defendant continues to argue regarding whether the video was sent to or received from the Cedric account. (R. Doc. 104, p. 3.) The Court has previously found that the distinction does not impact probable cause. (R. Doc. 81, p. 9.)

[3] There are a number of reasons why a particular video could have been sent or received from a Snapchat account and would not be in the data returned to a search warrant, including that the video was not saved by the user.

3

Woods goes to Mall of America and Wisconsin Dells. (*See* R. Doc. 72.) Detective Obert later described that during a review of the pictures from Woods' residence there was a whiteboard with "Mall of America" written on it with the month of "Nov" next to it. *Id*. Also on the whiteboard was "Jan Dells." *Id*. In assessing probable cause, both law enforcement and the issuing magistrate may draw "reasonable inferences from the totality of the circumstances." *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017). The issuing court certainly could infer that the whiteboard, at a minimum, corroborated Maguire's statements about Woods traveling with the minor victims, however, no such conclusion was asserted by Detective Obert. (*See* R. Doc. 72.)

The defendant focuses a lot of time on alleged innocent explanations for this information. As an initial matter, law enforcement has no affirmative duty to seek out every possible innocent explanation for information before seeking a search warrant. Second, even innocuous information, when viewed under the totality of the circumstances, can support probable cause. *See, e.g.*, *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) ("Innocent actions can give rise to reasonable suspicion when considered as part of the totality of the circumstances.")

Here, Detective Obert did nothing improper by including information about evidence previously found during a search of the defendant's residence in the subsequent search warrants, particularly given its correlation to information provided about by Maguire about Woods. The fact that that evidence (the words on the whiteboard) *may* have an alternative, innocent, explanation does not entitle the defendant to a *Franks* hearing, as there is no allegation (let alone credible evidence)

4

that Detective Obert knew any of the explanations offered by Woods at the time he swore out the search warrant, and therefore there cannot be a reckless or knowing omission.

### (3) Maguire described receiving more than one image/video from Woods.

The defendant next claims that Detective Obert falsely stated that Maguire also received a video of MV1 performing oral sex on Woods. (R. Doc. 104, p. 5.) The search warrant affidavits state "Kyle [Maguire] stated he received a Snapchat video from David Woods of Woods receiving oral sex from [MV1]." (R. Doc. 72, p. 5.) Woods claims that Maguire was only talking about one video and that it was the video in which MV1 was wearing underwear and was not child pornography. (R. Doc. 104, p. 5.) The video of the interview of Maguire (which will be submitted as Gov. Ex. 1)[4] shows that when the female officer asked about how many videos of [MV1 and MV2] Maguire *saved* he said just the one (which referred to the video of MV1, in his underwear, discussing Maguire coming down and receiving oral sex), however, when the officer followed up about whether Maguire thought Woods had created other images/videos of the minor victims, he responded affirmatively and described that he [Maguire] had seen them. (*See* Gov. Ex. 1 at approximately 8:54:13 (on screen time).) Maguire then made the statement about specifically observing the image/video of Woods receiving oral sex from [MV1]. *Id.* The video of the interview makes clear that the statement about just one video is referring to images/videos that Maguire *saved*,

---

[4] The government would argue that the defendant's assertions alone do not rise to the level required for further review, however, in the interest of efficiency, the government is providing the video to dispel this argument.

however, Maguire clearly stated he had received another image/video from Woods of Woods receiving oral sex from [MV1] and therefore, the statement in the affidavit was not false and a *Franks* hearing is not warranted.

**(4) The affiant did not state that Maguire knew MV1's name**.

The defendant next argues that "[t]he affiant and Government state Maguire named [MV1] by name during his interview, they state Maguire state[d] Woods received oral from [MV1]." (R. Doc. 104, p. 5.) The affidavits do not state that Maguire named [MV1] during his interview. (*See, e.g.*, R. Doc. 72, p. 5.) The affidavits state that Maguire stated he received a Snapchat video from Woods of Woods receiving oral sex from [MV1]. *Id*. The affidavit further describes that officers had a video of "a juvenile boy in only his underwear telling Kyle [Maguire] to come see him and he will perform oral sex on him. . . I [Detective Obert] was able to identify this boy as [MV1]." *Id*. at p. 6. Given the context of the interview, it is clear that Maguire was talking about the same minor child, who was approximately 12 years old, who was in the video law enforcement had, who Detective Obert identified as [MV1]. (*See* Gov. Ex. 1; R. Doc. 72, pp. 5-6.) While the affidavit could have been more clear that Maguire did not remember MV1's name, it did not affirmative state that Maguire named him, and the inclusion of that information (that Maguire did not remember MV1's name) would not have changed the probable cause analysis.

**(5) &(7) The affidavit contained sufficient information about Maguire's credibility.**

The defendant additionally argues that Maguire was not credible. (*See* R. Doc. 104, pp. 6, 7-9.) The defendant first argues that Maguire was not credible because he

6

stated the "Maynard_9320" account was not his Snapchat account. (R. Doc. 104, p. 6.) The defendant further argues that "[d]espite Maguire stating Maynard_9320 was not his account the search warrant reads as Maguire's account Maynard_9320. Either Maguire was lying and not credible, or this is another mistatment [sic] and omission made by the affiant or both." *Id*.

As with the information related to the Cedric account, the information about specifics of the Maynard account ownership does not affect probable cause as to Woods. (*See* R. Doc. 81, p. 9. ("Without resolving this dispute, the Court finds that it does not undermine the probable cause determination for the search warrants in light of the evidence which did connect Defendant to the video (identification of MV1 and the video's apparent setting in the kitchen of East Pleasant Street)."). The affidavits contained information that at the time of the statement, Maguire was under investigation himself related to child pornography charges. (*See, e.g.*, R. Doc. 72, p. 6.) It is not surprising that someone involved in a criminal offense may attempt to distance himself from incriminating evidence, however, Maguire's admissions about David Woods also implicated himself (including his receipt of child pornography), which lends credibility to his statements relating to Woods. *See, e.g.*, *United States v. McAtee*, 481 F.3d 1099, 1103 (8th Cir. 2007) (holding that the fact that statements made were against the speaker's penal interest lends credibility to the statements). Regardless, given Maguire's admissions to obtaining the video of MV1, taken in Woods' kitchen, and who was identified as MV1 by Detective Obert, even an inclusion of Maguire's denial of the Maynard Snapchat account would not have changed the

7

probable cause analysis as to Woods, and therefore, a *Franks* hearing is not warranted.

The defendant also challenges Maguire's credibility based upon other statements during his interview minimizing his conduct, including denying contacting minors out of state, denying he forced or coerced minors to trade videos, and his statement that Woods had two sons. (R. Doc. 104, pp. 7-8.) Woods is also critical of Detective Obert's choices to include certain information from Maguire's interview while excluding other information. (R. Doc. 104, p. 8.) As with the initial motion to suppress, all of this is mere speculation about what could have rebounded in his favor, which is not sufficient to warrant a *Franks* hearing. See *United States v. Gater*, 868 F.3d 657, 659 (8th Cir. 2017).

Even if the Court finds that the defendant has made the requisite preliminary showing that the facts were omitted with the "intent to mislead the issuing judge, or omitted [ ] in reckless disregard of the fact that the omissions would mislead," in order to be entitled to a hearing, the defendant must still show that "the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Gater*, 868 F.3d 657, 659-60 (8th Cir. 2017), cert. denied 138 S. Ct. 751 (2018). Here, given the information from the affidavit about Woods' involvement in the distribution of child pornography, even if the affidavits were supplemented with the information suggested by Woods, there would still be probable cause to further investigate Woods, and therefore, a *Franks* hearing is not warranted.

### (6) The affiant accurately described the state of the house on East Pleasant Street.

The defendant further claims that Detective Obert falsely stated that the "house on 2742 East Pleasant Street was empty on May 28, 2021." (R. Doc. 104, p. 6.) The defendant further takes issue with the fact that no pictures of the empty house were provided. *Id*. The affidavit states that "[o]n Friday, May 28th 2021 I attempted to conduct surveillance on 2742 E. Pleasant St. to locate David Woods. There was a for sale sign for the residence in the front yard and the residence appeared empty compared to when it was searched on February 3rd 2021. The residence has a sale pending according to Realtor.com." (R. Doc. 72, p. 6.) The defendant admits that the house was for sale and being shown by a realtor. *Id*. The defendant further admits that he had stayed at hotels. *Id*. The statement that the house "appeared empty compared to when it was [previously] searched" does not mean there were no items in the house at all, and cannot be said to be a knowing false statement warranting a *Franks* hearing.

The defendant also raises issue with the statement about observations of his vehicle at his parents' residence. (R. Doc. 104, p. 6.) The defendant asserts that "[t]he defendant and his father swapped vehicles." *Id*. Even if that is true, Woods has provided no (credible) information that Detective Obert knew that at the time that he swore to the affidavit. The defendant admits frequenting his parent's residence, but claims that he "could only visit his sons at his parents' house per DHS agreement during the process." *Id*. Even if the defendant had an agreement with DHS not to reside with his parents (which has not been shown by credible evidence), there is

nothing to show that Detective Obert knew about that agreement. Furthermore, even if there was credible evidence that such an agreement existed, that Detective Obert knew of it, and that Detective Obert recklessly or knowingly omitted it from the search warrant, there is nothing about an agreement with DHS that means that the defendant was not in fact frequenting his parents' residence, as alleged in the affidavit, and that given the pending sale of his residence, he was storing items there. Simply put, there has not been the requisite showing to warrant a *Franks* hearing.

**(8) No additional information was omitted to mislead the magistrate and misrepresent the known facts.**

The defendant further claims that Detective Obert omitted information that MV1 "had made non-confirmed/false allegations against Woods" and that "DHS had also confirmed [MV1] had made more than 17 or more false allegations/non-confirmed findings in the past." (R. Doc. 104, p. 9.) As an initial matter, it is worth nothing that a "non-confirmed" allegation is not the same as a false allegation. Regardless, Woods has provided nothing more than an argument that this information even exists. There has been no requisite showing of credible information that the information exists, or that Detective Obert knew about it and recklessly or knowingly omitted it from the affidavits. Even if the Court were to assume such information existed, and that Detective Obert recklessly or knowingly omitted it, the fact that prior allegations have been unfounded, does not negate the probable cause contained in the affidavit when there is a video of MV1 propositioning an adult for a sex act, standing in Woods' kitchen; and a statement that Maguire had received and viewed a video, from Woods, of Woods receiving oral sex from MV1. Because the statements, even if included,

10

would not negate probable cause, the defendant is not entitled to a *Franks* hearing.

The defendant further makes some claims about DNA evidence (R. Doc. 104, p.9), however, nothing about DNA evidence was included in the affidavits, and he does not claim that there is anything about the DNA evidence, or lack thereof, that could have diminished probable cause, so that claim is unavailing.

### III. PROBABLE CAUSE

The defendant also makes claims that insinuate the search warrants lacked probable cause, specifically (9) there was no link between the defendant and the video (which was not child pornography)[5]. The defendant cites out of circuit cases to assert that a search warrant for child pornography "'shall' be accompanied by an image or detailed description supporting the warrant application." (R. Doc. 104, p. 10.)

The first case cited by the defendant, *United States v. Clark*, 668 F.3d 934, (7th Cir. 2012), does not stand for the proposition urged by the defendant. In that case, the search warrant did not contain any such image and the Seventh Circuit affirmed the denial of the motion to suppress. *Id.* at 940 ("In his affidavit, [the officer] did not provide an example of [the defendant] downloading child pornography; however, he did not need to do so."). While the Seventh Circuit did discuss the need to include an image or detailed description, under some circumstances, they held that the evidence was nonetheless sufficient in that case to support probable cause. *Id.* at 941.

The defendant then cites to *United States v. Lowe*, 516 F.3d 580, 586 (7th Cir. 2008). (R. Doc. 104, p.10.) That case specifically states "[a]s a general matter, an

---

[5] Neither the government, nor the affiant, claim that the video of MV1 wearing underwear constitutes child pornography under federal law.

issuing court does not need to look at the images described in an affidavit in order to determine whether there is probable cause to believe that they constitute child pornography." *Lowe* at 586. Not only does *Lowe* not support the defendant's assertion that an image must accompany an affidavit, but it is also distinguishable from this case as the search warrants here were not only looking for child pornography, but also other communications about the sexual abuse of the minor children and trips taken. (*See* R. Doc. 72, p. 6.)

The third case cited by the defendant, *United States v. Pavulak*, 700 F.3d 651 (3rd Cir. 2012) also does not stand for the proposition cited by the defendant. In that case, the issue the Third Circuit was dealing with was whether a conclusory statement about the defendant viewing "child pornography" was sufficient, without details about what the alleged "child pornography" images depicted. *Id.* at 661. The Third Circuit held that the information provided did not provide adequate details for the magistrate to determine whether there was a fair probability that what was depicted in the images in fact met the statutory definition of child pornography. *Id.*

Though none of these cases are binding, they are also not, generally, inconsistent with Eighth Circuit precedent regarding probable cause. Each, generally, stands for the proposition that enough information must be provided to the magistrate to determine whether probable cause exists to believe a crime has been committed. In the context of child pornography offenses, when probable cause is based upon information about specific images of child pornography, the affidavit must include sufficient information to ensure that the magistrate can determine whether

the images that form the basis for probable cause meet the statutory definition of child pornography. However, as previously briefed, probable cause is not considered in a vacuum and is determined on a case-by-case basis. (R. Doc. 78, p.6.)

Here, the affidavit contained a description of the child pornography that Maguire said Woods had distributed to him. (R. Doc. 72 p. 5 ("Kyle [Maguire] stated he received a Snapchat video from David Woods of Woods receiving oral sex from [MV1].")[6]) The description provided, particularly when considered in the context of the other information contained in the affidavit, the magistrate with a sufficient basis for determining that probable cause existed.

The defendant argues that because the video of MV1 in his underwear was not sent or received from him, there was not probable cause. That simply is not true. As otherwise discussed, probable cause is not considered by taking each piece of evidence individually. The Court considers the totality of the circumstances, and the affidavits each contained probable cause.

## IV.  CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny defendant's renewed Motion to Suppress and Request for a *Franks* Hearing without a hearing or argument.

---

[6] MV1 was identified as a 12-year-old in another portion of the affidavit. (R. Doc. 72, p.5.)

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:  */s/ Andrea L. Glasgow*
Andrea L. Glasgow
Assistant United States Attorney
131 East Fourth Street, Suite 310
Davenport, Iowa  52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Emails: andrea.glasgow@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2023, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the (pro se) defendant via US MAIL.

UNITED STATES ATTORNEY

By: */s/ Andrea L. Glasgow*, Assistant United States Attorney