IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 3:22-cr-36 |
| v. ) | |
| ) | RESPONSE TO DEFENDANT'S |
| DAVID MICHAEL WOODS, ) | MOTION FOR NEW TRIAL |
| ) | |
| Defendants. ) | |

COMES NOW the United States of America, by and through Assistant United States Attorney, Andrea L. Glasgow, and hereby resists the defendant's pro se Motion for a New Trial, filed at docket 199.

**I. Procedural History**

On September 26, 2023, the jury returned unanimous guilty verdicts against the defendant on counts 1, 2, 3, and 5 (the entirety of the counts against this defendant). (DCD 182.)

On October 20, 2023, the defendant filed a Motion for New Trial. (DCD 199.)

**II. Argument**

*A. MOTION FOR NEW TRIAL IS UNTIMELY*

Under Federal Rule of Criminal Procedure 33, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."[1] Fed. R. Crim. Pro. 33(b)(2). The time for filing the motion is "inflexible" and "assure relief to a party properly raising them,

---

[1] The defendant asserts that some of his claims are based upon newly discovered evidence; however, as will be more thoroughly discussed below, there is no such "new" evidence, and the timeliness of the motion should be analyzed under the "other grounds" timeline.

1

but do not compel the same result if the party forfeits them." *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (finding the "Rule 33, like Rule 29 . . . is a claim-processing rule—one that is admittedly inflexible because of [the rule]'s insistent demand for a definite end to proceedings.").

Here, the verdict was returned by the jury on September 26, 2023. The defendant did not file his motion for new trial until 24 days later, 10 days past the deadline, on October 20, 2023. The defendant's motion for a new trial is untimely and should be denied.

### B. MERITS

Even if the Court considers the merits of the defendant's untimely motion for a new trial, the motion should still be denied.

Federal Rule of Criminal Procedure 33 states that the Court "may vacate any judgment and grant a new trial if the interests of justice so requires."[2] The trial court "has wide discretion in deciding whether to grant a new trial in the interest of justice," but, the Eighth Circuit has made clear that the authority to set aside a jury verdict and grant a new trial "should be exercised sparingly and with caution." *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980).

---

[2] The Rule does not define "interests of justice" and courts have had little success in trying to formulate a general standard. *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Rule 33 requires a new trial in a variety of situations in which trial errors or omissions have jeopardized the defendant's substantial rights. *Id.* Thus, if the evidence weighs so heavily against the verdict that there is a strong belief that the defendant has been wrongly convicted it is "in the interests of justice" to set aside the verdict. *See United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994); *United States v. Brennan*, 326 F.3d 176, 189 (3rd Cir. 2003).

The defendant asserts several grounds for a new trial. Most of the grounds are simply a rehashing of issues that have been previously ruled on by the Court. None of the grounds show that the defendant's substantial rights have been jeopardized, the weight of the evidence against the defendant was strong, and the defendant's motion should be denied.

**1. "Newly discovered evidence."**

The defendant first asserts that he is entitled to a new trial because of "new evidence." However, the evidence the defendant raises is not new and is not grounds for a new trial.

*A. Video from the Muscatine County Jail*

The defendant first asserts that he should be granted a new trial because of "new evidence . . . including but not limited to a video of Kyle Maguire at the Muscatine County Jail where Maguire states he will say whatever the Government asks him to say in order to cut time off of his sentence." (DCD 199, p. 1.) The government has no knowledge of the existence of any such video, and the defendant does not provide any additional information about when the video is from, how it was obtained, or why it is "new." Based upon context, this appears to be a rehashing of the defendant's previous claims regarding a conversation that he alleges occurred between himself and Mr. Maguire, prior to trial, at the Muscatine County Jail. (*See e.g.*, DCD 137, p.1 ("Maguire said he'd say anything they want if they (the Government) will take time off his sentence.").) At the hearing on the defendant's pre-trial motion, on September 2, 2023, the Court informed the parties that the Court

had contacted the Muscatine County Jail and asked that they preserve any relevant video in case either party wished to obtained video. As the defendant is the one who raised that this conversation allegedly occurred, over a month before trial, and was advised of the potential existence of video, more than three weeks before trial, any evidence related to that incident is not "new" evidence and is not the grounds for a new trial. Maguire testified and the defendant was allowed, and did, cross examine him about the contact that they had at the jail. This is not grounds for a new trial.

### B. *Grindr Search Warrant Return*

The defendant next claims that "[a]nother piece of evidence would be the Grindr search warrant return for David Woods which will show Defendant did not communicate with Mr. Maguire on Grindr." (DCD 199, p. 1.) Woods goes on to make assertions that Maguire could not have communicated with Woods on Grinder due to the nature of Grindr.

No search warrants were executed on Grindr related to this investigation, and therefore, no "Grindr search warrant return for David Woods" exists. The discovery (p. 1238) reflects that Detective Obert researched what records would be available from Grindr, and learned that Grindr does not retain any messages, so he did not execute for any search warrants on Grindr related to this case. No such evidence exits, and therefore, it cannot be "new evidence" which justifies a new trial.

As far as Woods' claim that Maguire perjured himself related to stating he communicated via Grindr, Maguire testified and was available for cross examination.

4

Additionally, Detective Obert testified and was available to be questioned regarding his knowledge of Grindr. This is not a basis for a new trial.

## 2. Evidence not allowed at trial.

The defendant next claims that several areas of evidence were improperly excluded from evidence at trial and that the improper exclusion of that evidence requires a new trial. (*See* DCD 199.) The defendant's claims are meritless and his motion for new trial should be denied.

### A. *DNA Evidence*

Woods first claims that the DNA evidence was excluded in error. (DCD 199, pp. 1-2.) While the government disagrees with Woods' assessment of the relevance of the evidence, the Court did not prohibit Woods from presenting evidence related to the DNA testing, at trial, through the appropriate witness(es). The issue at trial was that Woods had not subpoenaed the appropriate witness(es). This issue was raised before trial, and it was specifically discussed that the defendant had not subpoenaed the DCI Chemist who conducted the DNA testing, nor had he subpoenaed the officer who packaged the DNA. Woods was fully put on notice that he needed to have the DCI chemist if he wanted to present the results of the testing. At trial, Woods did not have the chemist, and the Court, properly, prohibited him from eliciting hearsay from other witnesses about the DNA testing. Woods was never prohibited from presenting evidence related to the DNA testing, through the proper witness(es). The defendant's failure to call the appropriate witness is his own, and one he was cautioned about.

The defendant's own inadequacies in presenting his own defense do not warrant a new trial.

### B. Discovery on Maguire

The defendant next rehashes his pre-trial arguments regarding discovery related to Kyle Maguire. (DCD 199, p. 2.) The defendant claims that "[d]espite Detective Obert interviewing Kyle Maguire prior to trial no discovery of that or other interviews were provided in discovery." *Id*. That is simply not true. Detective Obert's only interaction with Maguire was during a witness preparation meeting, with AUSA Glasgow, in preparation for trial. The meeting was not recorded, nor was a report generated, as it was not an "interview" but a witness preparation meeting. With regard to discovery, as has been extensively litigated in this case, Maguire was previously interviewed by Minnesota police. A copy of the recording of that interview and a report documenting that interview were previously provided in discovery, which the defendant certainly has had access to, as a number of his pre-trial filings cite to/quote from the interview to assert that Detective Obert made materially false statements in the search warrant affidavits. (*See e.g.*, DCD 122-1, p. 2 ("As stated in the Maguire police report Maguire knew no specific details of Woods.").) Maguire testified as a witness and was subject to cross examination. This is not a grounds for a new trial.

### C. Prior Bad Acts

The defendant next argues that "[d]uring the trial the Court ruled Defendant could not ask witnesses about their bad acts, such as witness Heider seeking a way

6

to murder his husband." (DCD 199, p. 2.) This assertion is false. The trial court in fact affirmatively ruled that the defendant was allowed to ask Heider about messages discussing plans to murder his husband.

The defendant also alleges that he was restricted from asking Heider about his other sexual relations with minors and the fact that he was not charged with pornography for additional pictures of minors. (DCD 199, pp. 2-3.) Again, this is incorrect. The Court, properly, put some limits around what questions were allowed to be asked, based upon relevance and other rules of evidence, but the Court repeatedly ruled that the defendant was allowed to ask the witnesses about pending charges, or the lack of charges being brought for their alleged criminal conduct, in order to attempt to show bias/motivation for their testimony. The defendant's failure to elicit his desired testimony was his own and not the result of any improper rulings by the Court. This is not grounds for a new trial.

### D. Dr. Harre

The defendant next argues that he is entitled to a new trial because at trial Dr. Harre testified about viewing photographs of MV1 and the notice of expert witness was based upon her examination of MV1. The trial in this case was complicated by a number of factors, one being the defendant's continued insistence on bring up issues which the Court had said were not properly admissible. One of the areas the Court had said was not to be brought up was the dismissal of the defendant's state charges for sex abuse and his claim that the dismissal of those charges was evidence of his innocence. Additionally, prior to Dr. Harre's testimony, the defendant had raised his

7

intention to elicit, from Dr. Harre, statements he claims MV1 made during Dr. Harre's examination of MV1 about liking pornography. The Court had ruled that Woods would not be allowed to ask Dr. Harre about statements made during the examination (as they were hearsay without an exception). Additionally, the Court repeatedly stated that neither party was to get into the state charges against Woods.

To that end, and in an attempt to avoid opening doors/raising questions about Dr. Harre's examination of MV1 (which was related to the allegation of hands-on sexual abuse by Woods), the government made a gametime decision to have Dr. Harre view of photographs/videos of MV1 which were entered into evidence in the trial. Dr. Harre's opinion, that MV1 was prepubescent, did not change, nor did the relevance of that evidence at trial (that if MV1 was prepubescent the defendant's possession of child pornography involved a prepubescent minor). Having Dr. Harre testify regarding of her viewing of photographs, rather than from her examination of MV1, did not materially change her testimony, nor did it prejudice the defendant.

Furthermore, when the defendant attempted to go into the examination of MV1 by Dr. Harre while Dr. Harre was on the stand, the Court excused the jury and allowed Woods to make an offer of proof of what relevant, admissible, evidence he wished to elicit from Dr. Harre about the examination. Woods could not offer any relevant, admissible, information that Dr. Harre could testify to from the examination and did not have any questions about her opinion that MV1 was prepubescent. This complaint ultimately comes down to the defendant's desire to elicit testimony/evidence which the Court previously, properly, determined was

inadmissible. Even now the defendant does not offer any argument about actual evidence he was not allowed to elicit from Dr. Harre, or any argument that he was in fact prejudiced by her testifying about reviewing photographs.[3] This is not grounds for a new trial.

### E. Detective Obert Errors in Affidavit

The defendant next claims that Detective Obert made errors in the search warrant affidavit regarding the date certain messages were sent. Detective Obert testified, and was subject to cross examination. The defendant was allowed, and specifically did, ask Detective Obert about the error related to the date of the messages. Detective Obert responded that the error was a typo. The defendant now complains that it "could not have been a typo error and the Defense should have been allowed to explore that error at trial." (DCD 199, p. 4.) The defendant does not assert how he was precluded from "exploring" this issue. *See id*. Woods was allowed to, and did, ask Detective Obert about the issue. He was not prohibited from further questioning Detective Obert or arguing during closing that it could not have been a typo and his failure to do so was his own. This is not a ground for a new trial.

---

[3] Additionally, Dr. Harre's testimony was cumulative of the fact that MV1 was prepubescent. The jury had before it a number of images/videos of MV1, which clearly depicted a prepubescent child. Additionally, the government offered evidence of statements that the defendant made that MV1 had "[n]o pubes at all, balls haven't dropped. He's tiny." *See* Gov. Ex. 93. Given the other evidence, Dr. Harre's testimony played a small role in the trial.

9

### F. Childer's Blackmail

Defendant next argues that "evidence that witness Childers had been blackmailed by someone with ties to the Davenport Police Department and at least three different detectives knew about the blackmail" should have been allowed.

It is unclear why the defendant believes that the person allegedly blackmailing Childer's had "ties to the Davenport Police Department" or that "three different detectives knew about the blackmail," but regardless, the government's recollection is that defendant was allowed to, and did, ask Childer's about the blackmail and that Childer's responded that the blackmail had nothing to do with this case. Again, the complaint appears to come down to the defendant's failure to elicit the testimony that he was hoping for, not any improper ruling by the court. This is not grounds for a new trial.

### G. Defense Witnesses

The defendant next claims that he is entitled to a new trial because "[s]everal defense witnesses were disallowed including David Heider who was allowed to plead the Fifth without any questions. The Defense should have been allowed to ask questions that would not have been covered by the 5th Amendment." (DCD 199, p. 4.) Prior to trial, the Court appointed attorneys for several witnesses, both government witnesses and defense witnesses, who appeared to have potential criminal exposure. Those attorneys then appeared with their (potential) witness clients and information was sought about the nature of their prospective testimony, so that the attorneys could discuss the potential testimony with their clients. The defendant proposed to

call David Heider. The defendant was specifically asked what topics he intended to ask David Heider about and his response was, generally, David Heider's involvement in the solicitation/production of child pornography and involvement in sexual acts with minors. David Heider's attorney spoke with his client and informed the Court that David Heider intended to invoke his Fifth Amendment Right against self-incrimination. The Court then had David Heider come into the courtroom (outside the presence of the jury) and he affirmed his intention of invoking his Fifth Amendment Right. It is well settled that "a defendant does not have the right to call a witness to the stand simply to force invocation of the right against self-incrimination in the presence of the jury." *United States v. Doddington*, 822 F.2d 818, 822 (8th Cir. 1987).

The defendant argues he should have been "allowed to ask questions that would not have ben covered by the 5th Amendment." (DCD 199, p. 4.) However, at the time of trial, defendant did not propose to ask any questions that did not clearly implicate David Heider's Fifth Amendment Right against self-incrimination, nor has he now offered what questions he could have asked David Heider, which would not have implicated his Fifth Amendment Privilege, and which would have so changed the trial that the interests of justice require a new trial.

Additionally, while the defendant states "several defense witnesses were disallowed" he only discusses David Heider. The defendant chose, on his own, not to call several of his witnesses. This is not a ground for a new trial.

### 3. Trial Rulings

The defendant finally argues that a new trial is required because he was unduly burdened when he was not given a copy of the rules of evidence prior to trial and required to state the questions he was going to ask witnesses.[4]

#### A. *Court Rules*

The defendant asserts that he had asked for a copy of the Court Rules and Federal Rules of Criminal Procedure and was not provided a copy of them or access to them prior to trial. (DCD 199.) The government's only recollection of the defendant requesting a copy of the rules was in his motion requesting pretrial release filed on July 11, 2023. (DCD 121.) In that motion, the defendant was arguing that because he was pro se, he needed to be released pending trial in order to prepare for trial. *Id*. It is the government's recollection that the court discussed with standby counsel during the detention hearing providing the defendant a copy of the rules. It is the government's understanding that standby counsel did provide Woods with a pocket copy of the Rules of Evidence, which he was seen referring to throughout the trial. Furthermore, the defendant clearly was accessing legal materials as he prepared for trial, as he filed a number of pre-trial motions citing to various cases. (*See e.g.*, DCD 159.)

---

4 The defendant also states, without argument as to the relevance, that "100% of the Government's objections were sustained while 100% of the Defenses objections were overruled." (DCD 199, p. 4.) The government does not believe that is an accurate statement of what occurred at trial, but regardless, the relevant inquiry would not be what percentage of either side's objections were sustained, it would be whether the ruling on the objections was improper, which the defendant has not alleged. The percentage of objections sustained/overruled is irrelevant and not grounds for a new trial.

12

Additionally, on the eve of trial, the parties had a final pretrial conference with the Court wherein prior discovery issues were discussed and the defendant specifically asserted that he was ready for trial. At no time, since his July filing, has the defendant asserted that he did not have access to materials he needed. Regardless, he was provided, by Mr. McAtee, a pocket version of the Rules, and at trial, the government specifically provided the defendant a full copy of the Federal Rules and Code Book. Woods made no request of the Court to take the book to the jail.

The defendant had access to the rules and did not make any specific, pre-trial, request (outside of an assertion about issues with the law library at the jail approximately two months before trial) that the Court denied. Moreover, when the defendant chose to represent himself, he was cautioned against representing himself, precisely because he lacked legal training. Despite these warnings, the defendant chose to proceed representing himself, and his failure to know/comprehend the Rules of Evidence is his own and is not grounds for a new trial. *See e.g., United States v. Garrett*, 42 F.4th 114, 120 (2nd Cir. 2022) ("A defendant's choice to represent himself 'must be honored,' 'although he may conduct his own defense ultimately to his own detriment.'"); *see also Faretta v. California*, 422 U.S. 806, 835 (1975) ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.").

Furthermore, defendant was provided standby counsel with whom he was allowed, and did, consult regarding matters both before and during the trial. The

defendant's lack of familiarity with the rules of evidence was his own failure and is not grounds for a new trial.

### B. *Proffer of Questions*

The defendant finally argues that "[a]n undue burden was placed on the Defense as the Defense was asked what questions the Defense was going to ask witnesses or about evidence while the Government was not asked or made to present their questions or case without the jury." (DCD 199, p. 4.) This assertion is plainly false.

At several hearings prior to trial the government discuss anticipated witnesses, and the nature of their anticipated testimony. The government then filed a witness list and exhibit list, in advance of trial, and provided a copy of exhibits to the defendant, which he was allowed to take with him in the USMS holding area to review and which his standby counsel was allowed to take with him down to the jail the weekend before trial to meet with Woods (Woods was allowed out of court access to the exhibits which did not contain CP—Woods was provided a binder of CP exhibits as well, but those were required to remain in the courtroom). Additionally, throughout the trial, there were discussions at various points wherein the government outlined the anticipated testimony of witnesses and their relevance.

Additionally, despite repeated warnings, the defendant continued to disregard the Court's rulings on admissibility of various evidence, and continued to attempt to insert improper/inadmissible evidence into his arguments and questions. Furthermore, even outside of the defendant's intentional acts in violation of the

Court's orders, the defendant made clear at various points that he did not understand the law/rules of evidence and attempted to make improper arguments.

Both the defendant's lack of understanding of the rules, and his intentional disregard of the Court's specific evidentiary rulings, justified supervision of the defendant's presentation in front of the jury. The Court never made the defendant write out his questions and submit them ahead of time, and in fact, the defendant was rarely asked about specific questions he would ask the witness (one exception was his line of questioning with Dr. Harre, discussed above)—at times, particularly when the relevance of a witness was not apparent, the Court inquired into the nature of the witnesses testimony. The utility of that was multifaceted—to ensure that those with potential criminal liability were appointed attorneys; to ensure that proposed witnesses had relevant evidence to offer; to make rulings, outside the presence of the jury, on the admissibility of various lines of questioning; and to ensure the orderly administration of the trial. None of the Court's inquiries were burdensome, and all were entirely appropriate to ensure that the trial was conducted in an orderly fashion. *See e.g.*, *United States v. Recendiz*, 557 F.3d 511, 530 (7th Cir. 2009) ("A judge has broad discretion to place reasonable limits on cross-examination, based on concerns of, *inter alia*, confusion of the issues and relevance.").

### III. Conclusion

For the reasons outlined above, the defendant's motion for a new trial is untimely, lacks merit, and should be denied.

Respectfully submitted,

Richard D. Westphal
Acting United States Attorney

By: */s/ Andrea L. Glasgow*
Andrea L. Glasgow
Assistant United States Attorney
U.S. Courthouse
131 E. Fourth Street, Suite 310
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: andrea.glasgow@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2023, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the pro se defendant by U.S. Mail.

UNITED STATES ATTORNEY

By: */s/Andrea L. Glasgow*
Assistant United States Attorney