IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:22-cr-36 |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| DAVID MICHAEL WOODS, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States of America, by and through Assistant United States Attorney Andrea L. Glasgow, files this sentencing memorandum in anticipation of the sentencing hearing currently set for January 16, 2024, at 2:00 p.m.

**TABLE OF CONTENTS**

I.    BACKGROUND  ...........................................................................................1
II.   SENTENCING CALCULATION .............................................................2
III.  ISSUES TO BE RESOLVED .....................................................................3
IV.   GOVERNMENT'S RECOMMENDATION ...............................................13

### I.    BACKGROUND

On April 13, 2022, a six-count indictment was filed charging David Michael Woods with: Count 1, Production of Child Pornography, between on or about October 7, 2020, through on or about January 18, 2021, in violation of 18 U.S.C. § 2251(a), 2251(e); Count 2, Production of Child Pornography, between on or about February 18, 2020, through on or about September 30, 2020, in violation of 18 U.S.C. § 2251(a), 2251(e); Count 3, Distribution of Child Pornography, between on or about February 18, 2020, through on or about January 18, 2021, in violation of 18 U.S.C. § 2252(a)(2), 2252(b)(1); and Count 5, Possession of Child Pornography, on or

about June 9, 2021, in violation of 18 U.S.C. § 2252(a)(4)(B), 2252(b)(2). (PSR ¶ 1.)

Counts 4 and 6 applied to the co-defendant only. *Id*. A notice of forfeiture was filed

pursuant to 18 U.S.C. § 2253. (PSR ¶ 2.)

On September 26, 2023, the defendant was found guilty after a jury trial of

Counts One, Two, Three, and Five. (PSR ¶ 3.) There is no plea agreement and no

counts to be dismissed at sentencing. *Id*.

The government has filed a notice of no objections to the PSR. (R. Doc 204.)

The defendant filed numerous objections to the PSR. (R. Doc 206.)

## II.     SENTENCING CALCULATION

In the presentence report paragraphs 79-103 the defendant's guideline range

was calculated as follows:

| | |
|---|---|
| Base Offense Level [USSG §2G2.1(a)] | 32 |
| SOC [USSG 2G2.1(b)(1(B)] (12-16 year old) | +2 |
| SOC [USSG 2G2.1(b)(2)(A)] (commission of a sex act) | +2 |
| SOC [USSG 2G2.1(b)(3)] (knowing distribution) | +2 |
| SOC [USSG 2G2.1(b)(5)] (supervisory control) | +2 |
| SOC [USSG § 3C1.1] (obstruction) | +2 |
| Multiple Count Adjustment [USSG 3D1.4] | +2 |
| Pattern [USSG 4B1.5(b)(1)] | +5 |
| Total Offense Level | =43[1] |
| | |
| Criminal History Category (PSR ¶ 107): | I |
| | |
| **Guideline Sentencing Range (PSR ¶ 149):** | **1,200 months[2]** |

---

[1] Defendant's total offense level would be 49, pursuant to Chapter 5, Part A (comment n.2), the offense level will be treated as a level 43.

[2] A category 43, CHC I, would ordinarily provide for an advisory guidelines range of life. However, pursuant to USSG § 5G1.2(b), the guideline range becomes the statutory maximum of 1,200 months.

### III.   ISSUES TO BE RESOLVED

#### A.  *Accuracy of statement regarding jail discipline*

The defendant asserts that paragraph 4 is incorrect because he did not lose any privileges as a result of his discipline and that the item he possessed was an envelope, not a letter. (R. Doc. 206.) Based upon records obtained from the Muscatine County Jail, the defendant appears to be correct that he did not lose any privileges and the item was an envelope addressed to Jeremy Woods.

#### B.  *Factual accuracy of offense conduct*

The defendant has raised issues with several factual paragraphs in the PSR. (R. Doc. 206.) The defendant's factual objections, generally, seem be based upon the defendant's continued denial of guilty. *Id*. As the sentencing court was also the trial court, the Court is entitled to consider evidence presented at trial in making determinations as to the factual accuracy of the offense conduct statement. *See e.g.*, *United States v. Lowrimore*, 923 F.2d 590, 594 (8th Cir. 1991) ("The District Court was entitled to rely upon its recollection of testimony at [] trial."); *United States v. Davidson*, 195 F.3d 402, 410 (8th Cir. 1999) ("In determining the facts upon which a defendant's sentence depends, a district court may rely on evidence submitted at trial."). The government will address the factual disputes raised by the defendant by PSR paragraph number:

**Paragraph 15.** The issue of whether Kyle Maguire described a second video has already been dealt with. The video of Maguire's interview was previously

provided to the Court related to the defendant's motion to suppress, and clearly

shows that Maguire did discuss a second video. Paragraph 15 is factually accurate.

**Paragraph 16.** The PSR reflects that officers went to Woods' residence with

DHS on January 28 (*see* PSR ¶ 8). A copy of the whiteboard (with MV2's name

redacted) is below. There is no dispute that the whiteboard did contain the name of

other cities. The government has acknowledged that the video of MV1 recovered

from Maguire's phone does not meet the definition of child pornography, as MV1 is

wearing underwear. Paragraph 16 does not assert otherwise. Paragraph 16 is

factually accurate.



**Paragraph 24.** Detective Obert will testify at the sentencing hearing in support of this paragraph.

**Paragraph 26.** The thumbnails and photos recovered from Woods' phone were entered into evidence at trial. The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 27.** Detective Obert will testify at the sentencing hearing in support of this paragraph.

**Paragraph 30.** Detective Obert will testify at the sentencing hearing in support of this paragraph. MV1 did mention his biological father during the interview, who he identified by name. However, MV1 went on to discuss Woods. Paragraph 30 is factually accurate.

**Paragraph 32.** Although the Snapchat return did not contain images sent between Woods and Childers, as paragraph 32 says, the messages indicate that pictures were sent, and there were photographs on Woods' phone that correlate to the date/time and content of the Snapchat messages between Woods and Childers, and Childers testified at trial that he did receive child pornography from Woods. The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 33.** The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 36.** Woods notes that "no chats were located between Woods and Maguire." Paragraph 36 does not indicate that any Snapchat communications

between the two were recovered, it merely notes that three photographs of Maguire were located in Woods' Snapchat data. Those photographs were presented at trial. The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 38.** Paragraph 38 discusses items found in Woods' email account. Woods states that "there was also an unfounded report by DHS for MV2." This information is not relevant to information contained in paragraph 38, which is discussing the contents of Woods' email. Paragraph 38 is factually accurate.

**Paragraph 42.** The government acknowledges finding messages between Childers and another discussing blackmail. These conversations are not relevant to Woods' offense conduct. The government does not dispute that Childers lived in Illinois.

**Paragraph 44.** Paragraph 44 details the interview of Childers, and does not allege to assert factually what occurred between Childers and anyone else. Paragraph 44 is factually accurate and Woods' comments appear to be commentary in nature.

**Paragraph 57.** The search of Heider's phone is relevant, as it contains images of child pornography of MV1 and MV2 taken by Woods, at his residence, and which Heider testified at trial were sent to him by Woods.

**Paragraph 58.** Paragraph 58 contains a description of photos and videos recovered from Heider's phone, which were entered into evidence at the trial.

Heider also testified at trial that he received the photos and videos from Woods. The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 59.** The information provided by Woods seems to be of a commentary nature and is not relevant to the offense conduct.

**Paragraph 60.** The information provided by Woods seems to be of a commentary nature and is not relevant to the offense conduct. Heider testified at trial that he received the photos and videos of MV1 and MV2 found on his phone from Woods.

**Paragraph 61.** Paragraph 61 describes screenshot (photos) of messages found in Heider's phone. The extent of the information available is provided. Because it was photos of the messages, and not the messages themselves, the date, time, and specific application used is not known. MV2's name was used as a part of the conversation. The information provided by Woods appears to be of a commentary nature.

**Paragraph 64.** The report related to this information has been provided and this issue has been litigated and was presented at trial. The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 68.** Paragraph 68 describes trial testimony. Woods had an opportunity to cross examine witnesses, including based upon prior inconsistent statements. The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 69.** Woods again tries to claim that the fact that MV2's phone location data put him (MV2) in Downtown Davenport at the time the photographs of the abuse of MV1, found on Woods' phone, were taken somehow shows that he (Woods) was with MV2 in Downtown Davenport. As was discussed at trial, MV2's phone location data put him (MV2) in downtown Davenport. That evidence did not in any way show that Woods was with MV2. The Court can rely on the trial evidence to find that this paragraph is factually accurate.

**Paragraph 70.** The defendant claims that his sister "lied for [him] about [them] having a perfect family." (R. Doc. 206.) It is clear from the context of Michelle Woods' testimony, and the phone call with Woods, that she lied about being with Woods on the date that he has photographs of MV1 being sexually abused. The government has provided the portion of the call referencing the "lie" (Gov. Ex. 200) and a transcript (Gov. Ex. 200A). Paragraph 70 is factually accurate.

**Paragraph 71.** The defendant's comments appear to be of a commentary nature. However, it's worth noting that Kyle Maguire was charged related to his possession of child pornography in Minnesota, which is where he was when he committed the offense.

### C. Guidelines Calculation

The defendant has asserted, without further explanation, that several of the guidelines enhancements "should not apply." (R. Doc. 206.) The government will address the enhancements by paragraph.

**Paragraph 74/86 Obstruction of Justice**

The defendant has asserted, without explanation, that the obstruction of justice enhancement should not apply. (R. Doc. 206.) United States Sentencing Guideline Section 3C1.1 provides for a two-level enhancement "[i]f (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense." Application note 4, provides a non-exhaustive list of examples of the types of conduct to which the adjustment applies, which includes suborning perjury. USSG §3C1.1, note 4(B). As discussed above, during the trial, the defendant called his sister, Michelle, attempting to establish an alibi for the sexual abuse against MV1 on January 18, 2021. During the questioning of Michelle, Woods specifically elicited testimony that he was with her, and their parents, in Downtown Davenport during the time that the photographs of the sexual abuse of MV1 were taken. Michelle specifically testified that she was with Woods, their parents, and MV1 and MV2 in Downtown Davenport from approximately 7:30/8:00 a.m. until around 2:30/3:00 p.m. on January 18, 2021. This testimony was contrary to the evidence from Woods' phone, Heider's google account, and Heider's testimony. This alibi testimony was also refuted by a text message from David Woods' phone, offered during rebuttal, where Woods asked his mother "Can I bring [MV2] by to

hang out with you for a few hours? He needs a break from [MV1]." That message was sent on January 18, 2021, at 9:41 a.m.

The fact that the defendant suborned perjury was explicitly confirmed by the jail call between Woods and Michelle on October 24, 2023, wherein Michelle said Woods had her lie for him. (*See* Gov. Ex. 200 and 200A.) It is clear, both from the nature of Michelle's testimony, and the context of the conversation on the jail call that the lie was related to the alibi testimony, not whether they have a "perfect family." The defendant's conduct of suborning perjury from Michelle constituted obstruction of justice and the two-level enhancement under USSG §3C1.1 was properly applied.

**Paragraph 81/90.** The defendant has stated, without explanation, that the two-level enhancement under USSG §2G2.1(b)(2)(A) "should not apply." (R. Doc. 206.) USSG §2G2.1(b)(2)(A) provides for a two-level enhancement "[i]f the offense involved—the commission of a sexual act or sexual contact." In this case, among other things, the defendant produced and distributed depictions of MV1 performing oral sex on Woods' penis and produced images of MV1 being anally penetrated by Heider's penis. The offense clearly involved the commission of sexual acts and sexual contact and the enhancement under §2G2.1(b)(2)(A) was appropriately applied.

**Paragraph 82/91.** The defendant has stated, without explanation, that the two-level enhancement under USSG §2G2.1(b)(3) should not apply. (R. Doc. 206.) USSG §2G2.1(b)(3) provides for a two-level enhancement "[i]f the defendant

knowingly engaged in distribution." In this case, the trial evidence included testimony from Heider, Maguire, and Childers that Woods distributed depictions of child pornography, which he had produced, to them. Additionally, as described at trial, several of the images/videos recovered from Heider's phone corresponded to thumbnails of the images found on Woods' phone. The offense clearly involved the defendant engaging in knowing distribution and the two-level enhancement under USSG §2G2.1(b)(3) was appropriately applied.

**Paragraph 101.** The defendant stated that the chapter four enhancement for a pattern of prohibited sexual contact "should not apply with no pattern or previous charges." (R. Doc. 206.) USSG §4B1.5(b)(1) provides, "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection 9a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual contact: The offense level shall be 5 plus the offense level determined under Chapters Two and Three." The offenses of conviction are a "covered sex crime," as defined in the application notes, and "prohibited sexual contact" is defined to include the production of child pornography. USSG §4B1.5, note 4(A). "[T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." USSG §4B1.5, note 4(B)(i). In this case, the trial evidence included evidence that the defendant transmitted a video of MV1 engaged in oral sex with Woods to Maguire; that Woods called Childers via a video chat and showed MV1 performing oral sex on Woods in

Woods' bathroom; and that Woods sent Heider a video of MV1 performing oral sex on Woods in Woods' kitchen, among other things. These contacts demonstrate a pattern of prohibited sexual conduct and the five-level enhancement under USSG §4B1.5(b)(1) was appropriately applied.[3]

**Paragraph 102.** The defendant claims he should receive a three-level decrease for acceptance of responsibly. (R. Doc. 206.) Under USSG §3E1.1(a) a defendant receives a 2-level reduction if he "clearly demonstrates acceptance of responsibility for his offense." USSG §3E1.1(a). In determining whether the defendant should receive a reduction for acceptance of responsibility, the Court should consider whether the defendant "truthfully admit[ed] the conduct comprising the offense of conviction, and truthfully admit[ed] or [did] not falsely deny[] any additional relevant conduct for which the defendant is accountable under §1B1.3." USSG §3E1.1, note 1. "A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." *Id*. Although the commentary states that "a defendant may clearly demonstrate an acceptance of responsibly for his criminal conduct even though he exercises his constitutional right to a trial," it specifically notes that it is a "rare situation." USSG §3E1.1, note 2.

Here, the defendant not only went to trial, but has frivolously objected to substantial portions of the offense conduct section of the PSR. (R. Doc. 206.) The defendant's objections are clearly frivolous and entirely inconsistent with

---

[3] It is worth noting that even absent this enhancement, the defendant's total offense level would be 44, so this enhancement does not affect the guidelines range.

acceptance of responsibility. Furthermore, as discussed above, the defendant attempted to obstruct justice by suborning perjury, which is also contrary to a demonstration of acceptance of responsibility. USSG §3E1.1, note 4. The defendant has not accepted responsibility and the reduction for acceptance of responsibility was appropriately withheld.

The defendant makes some additional objections that appear to be of a commentary nature, and which do not affect the guidelines calculation. (*See* R. Doc. 206.)

The defendant also filed a document titled "supplemental issues" which appears to rehash a number of issues which have been previously addressed and/or are not relevant to sentencing. (*See* R. Doc. 206, pp. 6-7.)

## IV.   GOVERNMENT'S RECOMMENDATION

The sentencing statutes inform this Court that it must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The Court, in determining the particular sentence to be imposed, shall also consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). The sentence must "avoid unwarranted sentence disparities among defendants with

similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The government will ask the District Court to find a final advisory guideline range of Level 43, Criminal History Category I, Advisory Guidelines Range of 1,200 months. The government is recommending the Court impose the statutory maximum sentence of 1,200 months of imprisonment.

This case involves ineffably horrific conduct by the defendant. The defendant used his position to gain access to multiple children and used his position of power over the children to groom them, sexually abuse them, allow other predators access to the children to sexually abuse them, produced child pornography of the abuse, and distributed child pornography of the sexual abuse to other predators. The evidence at trial showed the defendant directed videos of MV1 propositioning sexual acts, which the defendant then distributed in order to promote the sexual abuse of the children. The defendant continues to frivolously contest conduct which has been amply proven and suborned perjury at the trial in an attempt to obstruct justice. The depravity of the defendant's conduct is beyond comprehension. As demonstrated by the trial evidence, Woods began grooming, photographing, and distributing naked images of MV1 the day he got to Woods' house. (*See* Gov. Exs. 93 (Snapchat messages between Woods and Childers from 10/6/2020 discussing that MV1 is there for good, that "he'll learn to be naked too," that shower time was coming up and that Woods needed to "set the tone and expectations," and then Childers sending a message that says "cute butt," which prompted Woods to say "no

pubes at all, balls haven't dropped. He's tiny."), and 71, 71A, 71B, 72, 72A, 72B (photographs of MV1, naked, in Woods' shower, recovered from Woods' phone— taking into account UTC conversion, the photographs were captured on 10/6/2020 around 9:21pm-9:43pm)).    The defendant clearly poses a significant danger to the community and he should be incarcerated for as long as possible.

WHEREFORE, the government prays the District Court consider this sentencing memorandum in determining the final sentence of this Defendant.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:     */s/ Andrea L. Glasgow*
Andrea L. Glasgow
Assistant United States Attorney
U.S. Courthouse
131 E. Fourth Street, Suite 310
Davenport, Iowa 52801
Tel: (563) 449-5432
Fax: (563) 449-5433
Email: aglasgow@usadoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, January 10, 2024, I electronically filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the defendant (pro se) by U.S. Mail.

UNITED STATES ATTORNEY

By: */s/ Andrea L. Glasgow*
    Assistant U.S. Attorney